UNITED STATES of America, Plaintiff-Appellee,

v.

Ralph PARKS, Defendant-Appellant.

No. 71–1316.

United States Court of Appeals, Eighth Circuit.

Feb. 16, 1972.

Max C. Mehlburger, Little Rock, Ark., for defendant-appellant.

Fletcher Jackson, Asst. U. S. Atty., W. H. Dillahunty, U. S. Atty., Robert F. Fussell, Asst. U. S. Atty., Little Rock, Ark., for plaintiff-appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, STEPHENSON, Circuit Judge, and REGISTER, Senior District Judge.

STEPHENSON, Circuit Judge.

Defendant, Ralph Parks, appeals from his conviction after verdict of guilty by a jury of knowingly moving interstate certain cattle which were not accompanied by a prescribed certificate required by federal statutes and regulations. Two other defendants were similarly charged and their cases were consolidated with that of Parks for trial. Defendant Parks received a sentence of imprisonment for 180 days. Defendant J. C. Logan was fined $1,000. Defendant K. G. Sawyer was acquitted. Defendant Parks urges reversal upon two grounds (1) insufficiency of the evidence; (2) a new trial should be granted because irrelevant and prejudicial evidence was received over objection.

The information filed against Parks and upon which he was tried lists the pertinent statutes (21 U.S.C. §§ 111, 120, 122) and sets out the material regulations 9 C.F.R. 78.10, 78.12 and then charges further as follows:

"2. On or about April 1, 1969, said regulations being in full force and effect, defendant knowingly moved from Burkesville, Kentucky, to Forrest City, Arkansas, a number of cattle, to-wit, 40 head, other than in accordance with the provisions of the aforesaid regulations. The cattle were not * * * (exceptions not material to this appeal) * * * and were not accompanied by a prescribed certificate issued by a Federal or State inspector or accredited veterinarian. The said defendant, within the Eastern District of Arkansas, thereby knowingly violated a regulation made in pursuance of the aforesaid provisions of the Act of February 2, 1903, as amended."

Parks moved for judgment of acquittal at the close of the Government's case in chief and renewed his motion at the close of all the evidence. On this appeal he urges that the trial court erred in denying his motions because the record fails to disclose substantial evidence that Parks knowingly violated federal law by moving cattle or causing cattle to be moved interstate without required certificate. In reviewing the evidence in support of the jury verdict, we must take the view most favorable to the Government in support thereof. United States v. Liggins, 451 F.2d 577, 578 n. 1 (CA8 1971).

We are satisfied that the evidence amply supports the verdict of guilty. A brief review of the evidence will be sufficient. Marvin Laws (purchaser) of Forrest City, Arkansas, contacted Parks for the purpose of purchasing cattle for breeding purpose. Parks then made arrangement for the sale of 40 cows and 21 calves to the purchaser for $10,000, the cattle to be delivered to purchaser in Arkansas on approval. If the cattle were not approved, Parks agreed to transport them back to Kentucky where he had obtained them from defendant J. C. Logan, a livestock salesman in the employ of defendant K. G. Sawyer, a part owner of the Burkeville stockyards

in Kentucky, which owned the cattle. Upon direction of Parks, the cattle were trucked to Kennett, Missouri by a trucker retained by defendant Logan. Parks met the truck at Kennett, Missouri and directed that the cattle be transported to the purchaser in Arkansas. Parks accompanied the cattle to the premises of the purchaser and procured the check from the purchaser which was made payable to J. C. Logan [1] at Parks' direction. The purchaser at no time had any direct contact with defendant Logan or defendant Sawyer. In addition, the purchaser gave Parks his personal check for part of the trucking expense. Parks then paid the trucker $100 on account and instructed that the trucker be paid the balance of his fee ($200) from the $1,000 which was to be transmitted to him by defendant Logan as his share of the proceeds of the sale. Thus Parks received $1,000 less a part of the trucking expense for his part in the transaction. No documents accompanied the delivery of the cattle to the purchaser.

Parks contends that defendant Logan, having caused the cattle to be loaded and trucked, was responsible for moving or causing the cattle to be moved without the proper health certificate and that there is no evidence that he, Parks, knew or had reason to suspect there was no certificate with the cattle. We cannot agree. Parks was the moving party in the entire transaction. He personally accompanied the cattle from Kennett, Missouri to their final destination at Forrest City, Arkansas. At the time of delivery, upon inquiry by the purchaser, Parks assured him that the cattle were all right. Parks was an experienced dealer in livestock. He admitted he knew a health certificate was required for the movement of cattle in interstate commerce. To say the least, Parks knowingly aided and abetted the interstate transportation of these cattle without the proper certificate.

■ Parks next urges that he should be granted a new trial for the reason that over his objection irrelevant and prejudicial evidence was admitted concerning blood tests for brucellosis conducted more than eight months after the shipment. The tests showed twenty-one of the purchaser's cattle herd had brucellosis. The record discloses that the Government, over objections by the defendant that said evidence was too remote and irrelevant, offered the testimony of Herbert Hinson, a livestock inspector for the Department of Agriculture, that on December 12, 1969 he tested forty-five adult cattle on the purchaser's farm and twenty-one reacted, which indicated they were infected with brucellosis. Shortly after admitting this testimony, the trial court cautioned the jury that the testimony was received for a limited purpose.[2] The Government contends the trial court properly admitted this testimony pertaining to the inspector's investigation of identity and condition of the cattle shipped in interstate commerce, "as being relevant to

---

1. The check was a cashier's check payable to the purchaser and Logan which the purchaser indorsed and gave to Parks.

2. The Court's instruction follows: "Members of the Jury, I admitted this evidence of Mr. Hinson for a very limited purpose, which I will tell you about later. The charge here is not that these defendants sent sick cows into Arkansas, but they failed to comply with the regulation requiring the certificate. That's all they are charged with, but I am limiting it, to the purpose in connecting it with interstate shipment only. It may be possible they contacted it after they got here. They are not accused of transmitting diseased cattle, that's not the charge. The charge is they sent cattle here without the proper inspection, and I don't want you to think that they are charged with carrying or transporting diseased cattle. That's not the charge in this case. So, I want to make it clear. All of this information, I think is relevant and pertinent, particularly the evidence given, when asked, that these cows had no identification.

I ask if they are supposed to have identification moving interstate commerce?

THE WITNESS: Yes, sir. That's part of the health certificate, that they have to have for identification."

substantiate that the appellant knew that the cattle were transported without a health certificate." We disagree. Testimony as to the presence or absence of tags might have been relevant to identification, but the evidence as to the brucellosis condition was irrelevant to any issue in the case. The defendant was not charged with transporting diseased cattle.[3]

The Government further urges that even if irrelevant, the trial judge's admonition was sufficient to cure any prejudicial effect it might have had on the jury verdict. We cannot agree. The evidence before the jury indicated that Mr. Laws had purchased the cattle for breeding purposes and had paid $10,000 for them. Further, that cattle infected with brucellosis frequently abort, have weak calves, do not make proper gains in beef cattle, and in dairy cattle will not give the proper amount of milk flow. The implication clearly remained that the purchaser had lost a considerable portion of his investment. We cannot say, with fair assurance, that the decision of the jury was not substantially swayed by the irrelevant evidence. Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Cf. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). We recognize that the experienced trial judge cautioned the jury as to the limited purpose of this evidence and that the defendants were not charged with transporting diseased cattle. There are many circumstances in which it can be concluded that the jury may reasonably be expected to follow the court's instructions. See discussion, Bruton v. United States, 391 U.S. 123, 135–37, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In this instance we are satisfied that the cautionary instruction did not eliminate the prejudice. Cf. Kramer

v. United States, 317 F.2d 114 (D.C. Cir. 1963).

We affirm the trial court's denial of the motion for judgment of acquittal, but reverse and remand for new trial upon the ground that irrelevant and prejudicial evidence was admitted.

---

3. We do not reach the issue of remoteness because not material to disposition of the question at hand. There was testimony that the health certificate is only valid for thirty days because the disease is highly contagious.